IN THE OREGON TAX COURT
MAGISTRATE DIVISION

ABBY'S, INC.,
*Plaintiff,*

*v.*

DEPARTMENT OF REVENUE,
*Defendant.*
(TC-MD 983147B)

John Gadon, Garvey, Schubert & Barer, Portland, argued the cause for Plaintiff.

James Wallace, Assistant Attorney General, Department of Justice, Salem, argued the cause for Defendant.

Decision for Plaintiff rendered July 19, 2000.

### JILL A. TANNER, Magistrate.

Plaintiff appeals Defendant's Notices of Tax Assessment, assessing Plaintiff for fiscal tax years ending June 30, 1995, and June 30, 1996. A trial was held April 11, 2002, in the Oregon Tax Court, Salem, Oregon. John Gadon, Attorney at Law, appeared on behalf of Plaintiff. James Wallace, Assistant Attorney General, appeared on behalf of Defendant. Richard P. Olson, Chief Financial Officer, Abby's, Inc., and Victoria E. Hunt, Vice President and Escrow Officer, Commercial Title, testified on behalf of Plaintiff.

During the time allotted for preliminary matters, Gadon orally asked the court to grant Plaintiff's request that copies of its federal and state income tax returns, which were submitted as Exhibits 50, 51, 52, and 53, be sealed. Without objection from Defendant, the court granted Plaintiff's request.

At the conclusion of the trial, the parties requested additional time to discuss a possible revision to Defendant's Notices of Tax Assessment and the submission of post-trial closing briefs. On June 12, 2000, Defendant filed its Post-Trial Brief, including four possible options for reporting the income tax liability based on the gain realized and recognized from the sale of the properties. Plaintiff filed Plaintiff's Response to Defendant's Trial Memorandum June 13, 2000.

On June 27, 2000, Plaintiff submitted Plaintiff's Reply to Defendant's Post-Trial Brief (Reply). Because it was filed after the parties' agreed deadline for post-trial submissions, the court did not read Plaintiff's Reply.

### STATEMENT OF FACTS

Plaintiff, Abby's, Inc., is an Arizona corporation headquartered in Eugene, Oregon. It is the owner of various pizza restaurants and related real property located principally in southern Oregon and the Willamette Valley. In late May or early June 1995, Plaintiff decided to sell 19 restaurants and related real property (collectively referred to as

properties) in order to remove the debt associated with those properties from its financial balance sheet. The designated buyer of the properties was an Arizona corporation, ABRE, LLC, which was controlled by the majority shareholders of Abby's, Inc.

On June 30, 1995, authorized representatives of Abby's, Inc. and ABRE, LLC signed a Purchase and Sale Agreement (Agreement) that was labeled "blackline 06-22-95 at 4:00 pm from draft dated _____ (blank)." According to the Agreement, the parties agreed that 19 properties that were located in six Oregon counties and one Washington county would be sold subject to the outstanding debt. The Agreement required that the current debt holders consent to the transfer and agree to a novation, releasing Abby's, Inc. from any liability for the debt and substituting ABRE, LLC, as the debtor. Without the debtor holders consent, a transfer of the properties would trigger the due-on-sale clauses contained in the existing deeds of trust. On June 29, 1995, a five-page letter of escrow instructions was sent to Hunt. According to the escrow instructions, Abby's, Inc., was to receive $150,000 in cash, and debt in the amount of $6,405,984 was assumed by ABRE, LLC. Abby's, Inc., agreed to carry a note in the amount of $29,999.

On July 9, 1995, the representatives signing on behalf of Abby's, Inc., and ABRE, LLC, revised the escrow instructions to Hunt. Using the letter of original escrow instructions as a *pro forma*, the representatives lined through and changed the consideration and the number of individual parcels sold, including the removal of all five parcels located in Lane County. Olson testified that the consideration was changed to reflect the real market value of the parcels determined by the certified appraiser rather than the tax assessed values that were used as the basis for the consideration in the original Agreement. According to a letter dated June 24, 1998, from the certified appraiser, the values of the properties were verbally disclosed to Olson between July 1 and July 11, 1995, with the written reports delivered sometime after July 11, 1995.

On July 13, 1995, Abby's, Inc., received cash in the amount of $140,000, ABRE, LLC, assumed existing debt in

the amount of $5,714,284 for the 14 parcels, and Abby's, Inc., took back a loan from ABRE, LLC, in the amount of $208,866. The titles were transferred and the transaction for the 14 parcels closed.

On November 14, 1995, the five Lane County properties were transferred from Abby's, Inc., to ABRE, LLC. Abby's, Inc., was successful in securing novations from all debtholders, except I. L. Investments Group, Inc., which held a promissory note for the Junction City property. That Lane County property along with the other four was transferred to ABRE, LLC. I.L. Investments Group, Inc., did not exercise its right under the due on sale clause.

Plaintiff originally reported the gain arising from the sale of 14 of those properties on its federal income tax return for fiscal tax year ending June 30, 1995. Because five of the 19 properties were finalized in November 1995, Plaintiff reported those sales on its federal income tax return for fiscal year ending June 30, 1996. It did not report any gain on its Oregon state income tax return for either fiscal tax year. When Defendant audited Plaintiff's corporate state tax return, Defendant concluded that Plaintiff should have reported the gain and issued its Notices of Tax Assessment. Subsequently, Plaintiff filed an amended state income tax return, alleging that the gain, if any, arising from the sale of all 19 properties should be reported in its fiscal year ending June 30, 1996.[1]

Defendant filed an Amended Answer on January 7, 2000, stating that the November 1995 sales should be reported on Plaintiff's state income tax return for the fiscal year ending June 30, 1995, and not fiscal year June 30, 1996, as reported by Plaintiffs. Defendant continued to allege that the sale of the 14 properties should be reported by Abby's, Inc., on its state income tax return for fiscal year ending June 30, 1995.

---

[1] In its Complaint, Plaintiff alleged that the sale of the properties was a financing transaction and not a sale and therefore no gain should be recognized. Subsequently, Plaintiff abandoned that allegation and alleges for purposes of this trial that the gain arising from the sale of the properties should be reported in its fiscal tax year ending June 30, 1996.

## ANALYSIS

The parties agree that the year in which Plaintiff must recognize the gain on the sale of its properties is based on when the sale is complete for federal income tax purposes. Defendant would have the court begin and end its analysis based on the fact that Abby's, Inc., uses the accrual method of tax accounting. Defendant argues that because Plaintiff uses the accrual method of accounting Plaintiff is required to include the gain from the sale in its taxable income prior to receipt in accordance with the Treasury Regulations under Internal Revenue Code (IRC) section 451, which, in relevant part, provides:

> "Under an accrual method of accounting, income is includible in gross income when all the events have occurred which fix the right to receive such income and the amount thereof can be determined with reasonable accuracy."

Treas Reg § 1.451-1(a).

■  Treasury Regulation section 1.451-1(a) requires a taxpayer using the accrual method of accounting to satisfy two tests prior to including an item in gross income. First, all the events must have occurred that fix the right to receive such income. Second, the amount to be included must be determined with reasonable accuracy. The court will explain that all events associated with the sale of the 19 properties by Abby's, Inc., including the sale price, could not be determined with reasonable accuracy until July 13, 1995.

■  Further, the court does not believe its scope of review should be so narrowly defined. This case is not an accounting case but rather an issue of when a sale transaction closed for tax purposes so that the gain could be computed with reasonable accuracy. Income taxation scholars have concluded that although the accounting method is important for "continuous sales of stock in trade," the cash or accrual method would "seem irrelevant when a casual sale is involved, and the time of gain or loss should be the same under either method." 1 Stanley S. Surrey et al, *Federal Income Taxation: Cases and Materials* 708 (Foundation Press 1978). Such transactions that occur infrequently must be evaluated based on the facts and not the method of accounting. To do otherwise, the

court would ignore the realties of the transaction and substitute its interpretation of the law without application to the facts.[2]

██ When the sale is an isolated sale of property other than merchandise or stock in trade, other considerations apply. IRC section 1001(a) computes gain or loss by using the amount realized, which under IRC section 1001(b) is money plus the fair market value of property received. Fair market value is a question of fact to be determined in each case and is not dependant upon the method of accounting. Further, the determination of gain or loss involves the issue of when a sale transaction is considered closed for tax purposes.

Abby's, Inc., entered into the sale of its properties for the purpose of removing the debt from its financial balance sheet so that it would, in the words of the chief financial officer, "look more like a restaurant business" than a real estate investment company. The sale of the properties was an isolated sale and not Abby's, Inc.'s, stock in trade. This transaction must be analyzed under IRC section 1001 *et seq*.

During the fiscal year ending June 30, 1995, Abby's, Inc., decided to sell various properties to ABRE, LLC. Abby's, Inc., did not know the fair market value of all the properties until July 11, 1995. On that date, July 11, 1995, the Agreement was amended, stating a total purchase price of $6,062,650 for the sale of 14 parcels. The title company was faxed revised escrow instructions. On July 12, 1995, the title company received notification that the promissory note from ABRE, LLC, to Abby's, Inc., would be $208,366. The Trust Deed and Security Agreement and Assignment of Leases were signed July 12, 1995. On July 13, 1995, Abby's, Inc., received $140,000 in cash that was part of the funds received from the purchaser by the title company on July 12, 1995. For the 14 properties, the Special Warranted Deeds were recorded on July 13, 1995, as were the Trust Deed and Security Agreement and Assignment of Leases. In accordance with the revised Agreement, indebtedness in the amount of $5,714,284 was assumed by ABRE, LLC. The transaction was closed.

---

[2] Defendant suggests that because the finalized transaction was in the same form as the parties first contemplated, the court should ignore the substance. Tax courts have consistently held that form does not control over substance.

■■    The question of when a sale is complete for federal income tax purposes is essentially one of fact. *Baird v. Commissioner*, 68 TC 115, 124 (1977). The applicable test is defined as a practical test that considers all of the facts and circumstances, with no single fact controlling the outcome. *Id.*; *Derr v. Commissioner*, 77 TC 708, 724 (1981); *Deyoe v. Commissioner*, 66 TC 904, 910 (1976). In this case, there are numerous facts including contract conditions and restrictions that must be considered. In late June 1995, the parties executed a contract. ABRE, LLC, agreed to buy and Abby's, Inc., agreed to sell some property with certain conditions and restrictions. Gain from the sale of property is gross income in the year when the sale is consummated, and not in the year when the contract was executed. *Veenstra & DeHaan Coal Co. v. Commissioner*, 11 TC 964, 967 (1948). After those conditions and restrictions were finalized, the parties had a mutual meeting of the minds as to the value and number of properties to be sold. Neither the value nor the number of properties matched those listed in the contract as originally executed. The gain from the sale was unknown until the transaction was complete.

The sale transaction for 14 properties was complete on July 13, 1995. Abby's, Inc., received its cash consideration on July 13, 1995. On that date, title to the properties was transferred. A promissory note was exchanged and indebtedness on the properties transferred. The total sale price including cash and the fair market value of property received (promissory note and indebtedness assumed) was known and the gain could be computed in accordance with IRC section 1001.

For tax purposes, the sale transaction for the remaining five parcels was complete on November 14, 1995. As of that date, the parties had determined the fair market value of the properties. Novations had been secured from all debtholders, except I. L. Investments Group, Inc. Abby's, Inc., determined that if I. L. Investments Group, Inc., decided to exercise its right under the due-on-sale clause it was prepared to pay off the debt rather than delay the title transfer of that one property. Payment was received by Abby's, Inc., and titles were transferred. The total sale price was known and the gain could be computed in accordance with IRC section 1001.

## CONCLUSION

IT IS THE DECISION OF THIS COURT that Abby's, Inc., shall report the gain from the sale of the 19 properties that are the subject of this appeal in its fiscal tax year ending June 30, 1996.

IT IS FURTHER DECIDED that Plaintiff's Exhibits 50, 51, 52, and 53 be sealed.